Our last case this morning is Durham v. Kilolo Kijakazi Thank you, Your Honor. May it please the Court. My name is Matt Richter. I represent Appellant Iris J. Durham. Honoring precedents set by this Court in cases like Goins v. McHenry and Aiken require reversal and remand in this case today. No physician who had any knowledge of plaintiff appellants' worsening cardiac arrhythmias, palpitation, and shortness of breath, the most recent instance of which resulted in hospitalization just a month before her administrative hearing, or the objective testing which confirmed these events, ever opine with regard to their medical significance and limiting effects. Did the 2019 records actually establish that her condition was worsening because she had been suffering from this condition for years? And these are just renewed episodes of VTAC. Your Honor. And she had been in the ER for this condition years earlier. So this is just an ongoing condition and the medical records establish that there's no material change in her disease. Here's the difficulty with that. There was a diagnosis of ventricular tachycardia and the reviewing physicians who looked at the condition, that diagnosis in their review of the case. Well, in fairness, it wasn't part of her claim. She identified diabetes and obesity. One more thing, I can't remember, but, I mean, it was part of her medical history, certainly, but it wasn't the foundation of her claim. It seems relevant to plaintiff appellant that if someone is experiencing arrhythmias, if someone is near syncopal, that that is something that the agency's reviewing physicians are going to and should look at and at least mention in their review of the evidence if, in fact, they observed it in the medical records. Did the ALJ rely on the agency's opinions? The ALJ found the opinions to be somewhat persuasive and... But then sort of rejected reliance on them, right? So they found a light residual functional capacity, meaning someone who could stand and walk for six hours of an eight-hour workday. The ALJ, based on their review of the objective evidence we're talking about here, reduced that to sedentary level of work, which would allow someone, the definition of it in SSR 8310 is occasional standing and walking, but which means one-third of an eight-hour workday or just over two hours of standing and walking. Were there any medical opinions that suggested that something more should be or some greater limitation should be imposed? There's no medical opinion that there should be a more restrictive residual functional capacity in the record, but plaintiff appellant's intention is that it's not necessarily a question of whether she could do sedentary light medium work. It's a question of whether, if she were to experience one of these episodes, if she were to experience an arrhythmia, a palpitation in which she became dizzy or near syncopal, whether she would miss time during that period of time. The problem here is that the objective evidence we're referring to, the relevant objective evidence here, the Holter monitor testing, the nuclear stress test, things of that nature show etiology, and in the case of the Holter monitor, show multiple instances of these episodes just a month before her hearing that suggest she's going to experience them in the workplace and that that should be part of her residual functional capacity. But the cardiologist to which she was referred for all of this specialist testing did that testing and offered a diagnosis that she has mild systemic disease, no acute problems, and no functional limitations. So it doesn't call into question the state agency physician's opinions here to the extent that the ALJ took account of them. Well, I mean, she was hospitalized. She was in the ER overnight, or in the hospital, in the ER, and then admitted overnight for this testing, and the doctor's reports do not indicate anything more than mild systemic disease, no acute problems, and no functional limitations. That's also with regard to coronary artery disease, Your Honor, and that's not necessarily relevant to the arrhythmia issue. That finding was made after they did a surgical diagnostic – sorry, the name of the procedure escapes me, but... Catheterization. Yes, yes. And that was their finding as it related to coronary artery disease. The arrhythmia is somewhat of a different issue here. It's not real clear what exactly was causing it. It's just clear that on objective testing it was happening, and she was experiencing the symptoms that are associated with that. So the question then becomes, what is medically corroborated here? She alleges that she experiences these episodes, and the question is, does this halter-monitor testing support the notion that she would, in fact, experience episodes resulting in time off task to deal with this issue? And the ALJ concluded that her VTAC was a severe impairment, or an impairment that the agency defines as significantly interfering with work activity. And the question for the court then is, logically, what limitation within the residual functional capacity did the ALJ conclude that relates to the experience of one of these episodes? Because the ALJ found that she could still exert herself to the extent she would be standing and walking for just over 2 hours of an 8-hour day. Logically, has the ALJ articulated a rationale that explains how in those 2 1⁄2 hours she would never experience one of these episodes that a 48-hour halter-monitor clearly indicates she experienced multiple times? And so I see I'm running close on time here. I will reserve the rest of my time, if that's all right, if there are no more questions. That's fine. Thank you. Thanks. Ms. Schwartz. May it please the Court, my name is Allison Talbert Schwartz, and I represent the Commissioner of Social Security. I'm going to briefly respond to Appellant's arguments first. The Appellant argues that cases like Goins, McHenry, and Aiken require reversal and remand. However, though all of those cases are distinguishable from the instant one in that A, there was an entirely new impairment at issue in those cases, which is not the case here, and B, those cases, at least with respect to McHenry and Aiken, presented treating source opinions that were submitted by the claimant, opining that the claimant was unable to perform any work. That, as mentioned, is not the case here. This case is more like Jadotus and Ducharmes, which the Court decided last month, where the ALJ reviewed all the evidence under consideration. There's no opinion from a treater, finding the claimant more limited than the ALJ found, and in short, the claimant did not meet her burden of proving that she was unable to perform sedentary work, which is the operative notion here. The second argument is that the reviewing physicians did in fact review cardiology records. Ms. Durham suggested that they did not. If you look on pages 82 and 83 of the record, it shows that the state agency physician on reconsideration reviewed cardiology records. The other point that I wanted to correct is Ms. Durham's counsel's argument that sedentary work involves walking for more than two hours. It does not. Sedentary work involves walking for at most two hours. The ALJ considered Ms. Durham's allegations that she had trouble standing and walking and exerting herself, and accommodated her allegations by limiting her to a mostly seated job. Another thing I wanted to correct is that Dr. Weiss's finding of no functional limitations was not issued after a cardiac catheterization. That was issued as a general notation at the end of his examination before her cardiac catheterization. Finally, I want to correct the appellant in his assertion that the ALJ did not accommodate Ms. Durham's ventricular tachycardia, which is extra heartbeats in the left ventricle of the heart. The ALJ reviewed every treatment record and allegation in the treatment notes that documented Ms. Durham's ventricular tachycardia, and reasonably and generously accommodated her allegations by limiting her to not only a seated job, but a job that involves no exertion, no environmental conditions such as humidity and heat, that expressly accommodated her allegations that her impairments were exacerbated when she was in the heat. The Holter monitor test that Mr. Richter referred to showed episodes of shortness of breath. So to the extent that that argument was made, that argument also is inaccurate. The state agency physicians reviewed the cardiology record, the entirety of the medical record, as it then existed, but what about Ms. Durham's argument that the opinions didn't account for that condition, the VTAC and the palpitations? The opinions accounted for all of the evidence in the record. I am not sure that Mr. Richter's argument is accurate, that the opinions did not account for VTAC. It accounted for all of the limitations that she alleged she suffered as of the date of that opinion. Notably, they did review the cardiac records. Both state agency physicians noted that she suffered from high blood pressure, which resulted in symptoms similar to the ventricular tachycardia, and both of those doctors imposed limitations that were actually greater than the ALJ found. And really, as a matter of burden, Ms. Durham, who was represented by counsel at the hearing level and had the duty to put on her best case for benefits, knew going into the hearing that both of those doctors found that she was capable of a range of light work, yet despite having extensive cardiac workup, not only from a cardiologist, but from an electrophysiologist, that specializes in heart arrhythmias, she never provided an opinion showing that she had more limitations. In fact, those records, as the court had mentioned before, suggested that she had no functional limitations, and the electrophysiologist reviewed all of her records, including the one-night stay at the ER, and prescribed medication and said, come back and follow up with me in three months. The ALJ was reasonable to surmise that if there were any greater limitations that needed to be imposed, those extensive cardiac records would reflect such limitations. I also wanted to reference Ms. Durham's argument that the ALJ should have imposed a time-off task limitation. Again, this turns to burden. Ms. Durham had the burden of proving that a time-off task limitation was warranted when the ALJ determines what an individual can and cannot do in the workplace. But instead of producing evidence supporting that limitation, she offers a series of assumptions, none of which are compelling. She assumes that her ventricular tachycardia, because it was a severe impairment, necessarily results in restrictions in the workplace. That is not how disability determinations work. Just because Ms. Durham has an impairment, that does not mean that it results in specific limitations or that it disables her, and the ALJ does not. Ms. Durham also speculates that her ventricular tachycardia and her symptoms would logically cause her to be off-task. And again, she offers no medical evidence supporting that assertion. And really, she does not get to decide what limitations are in her residual functional capacity assessment. That is for the ALJ to decide. And in that regard, this case is like the Court's recent opinion in Reynolds v. Kajikazi, where the claimant suggests that an ALJ should intuit a specific limitation that the claimant argues would logically occur based on her impairments. And this Court held that the ALJ does not need to impose a limitation that is based on speculation, nor does an ALJ need to explain his reason not to. To intuit such a limitation, as Ms. Durham is asking for here, would be contrary to the well-settled principle of the standard of review, and is generally asking the Court to re-weigh the evidence. And third, Ms. Durham relies on the premise that the only way to accommodate her heart-related symptoms is to impose a time-off task limitation. The ALJ thoroughly reviewed the record and explained the bases for his residual functional capacity assessment, and explained that seated work with various additional restrictions accommodated all of her limitations, including her ventricular tachycardia. If the Court has no further questions, I will close, and thank you for your time. Thank you. Mr. Richter. Thank you. So the appellant would contend here that Commissioner's arguments there perfectly illustrate why this case needed a doctor to opine upon it. We're having arguments over palpitations and these cardiac arrhythmias and the sorts of limitations that they cause. We're all laypersons here, as far as I know, and so the reason that we need medical expert testimony, and the reason this Court has found that interpretations of these sorts of objective tests require medical expert scrutiny and opinion before the ALJ concludes that that evidence is consistent with the limitations they assess, is because we don't know. I mean, we are not qualified to say whether someone's arrhythmia or palpitations certainly or certainly do not cause them to be off task. The purpose of the medical expert would be that they would hear the claimant's testimony, their allegations of what these events caused them, and they can provide testimony as to whether that's medically corroborated or not. And yes, Ms. Durham did not provide an opinion to that effect herself, but the Court has again found that the burden of the claimant is to produce evidence, not necessarily opinions, and that is, you can see that in the Kimplin case, the Scott case, it is, there's very little example evidence here where a medical expert could look at this and deem it medically corroborated that Ms. Durham would be off task. And so we ask the Court to reverse and remand and to order that an expert look at this case. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement, and that concludes the Court's calendar for today. The Court is in busis.